UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. Civil Case No.: 1:26-cv-3360

$32,000 U.S. Currency
(26-DEA-001860),

$1,321 U.S. Currency
(26-DEA-001862), and

Assorted Jewelry
(26-DEA-002090, Items 1-9),

Defendant Property.
_______________________________/

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES Plaintiff, United States of America, by and through its attorneys, Timothy VerHey, United States Attorney for the Western District of Michigan, and Daniel T. McGraw, Assistant United States Attorney, and states upon information and belief that:

## NATURE OF THE ACTION

1. This is a civil forfeiture action filed pursuant to 21 U.S.C. § 881(a)(6) and Supplemental Rule G(2) of the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America: $32,000 U.S. Currency (26-DEA-001860), $1,321 U.S. Currency (26-DEA-001862), and Assorted Jewelry (26-DEA-002090, Items 1-9) ("Defendant Property").

## THE DEFENDANT IN REM

2. The Defendant Property consists of $32,000 U.S. Currency (26-DEA-001860),

$1,321 U.S. Currency (26-DEA-001862), and nine pieces of assorted jewelry (26-DEA-002090), more specifically identified as:

a. 14 Karat Yellow and White Gold and Diamond "Lavacious" Necklace (Item 1);

b. 10 Karat Rose Gold Bottle and Diamond Hamsa Ash Holder Necklace (Item 2);

c. 10 Karat White Gold and Diamond Tennis Necklace (Item 3);

d. 14 Karat Yellow and White Gold "RICHIE RR RICH" Name Plate Pendant with 14 Karat Yellow Gold and Diamond Tennis Necklace (Item 4);

e. Man's Gold Rolex Sky-Dweller Watch with Green Rolex Box (Item 5);

f. 14 Karat White Gold and Mined Diamond Tennis Bracelet (Item 6);

g. 10 Karat White Gold and Diamond Tennis Necklace with 14K White Gold and Diamond Dog Tag "EARMA" Name Plate Pendant with Picture (Item 7);

h. 14 Karat White Gold and Mined Diamond Tennis Bracelet (Item 8); and

i. Lady's 14 Karat Rose Gold and Mined Diamond Tennis Bracelet (Item 9).

(*See* Ex. 1.) The Defendant Property was seized by the Drug Enforcement Administration during the execution of a premises search warrant in Lansing, Michigan on or about June 4, 2026. The Defendant Property is currently in the custody of the United States Marshal Service (USMS).

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A), because this action is being commenced by the United States of America as Plaintiff, and the acts giving rise to the basis for forfeiture occurred in this judicial district.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to forfeiture occurred in this judicial district, and/or pursuant to 28 U.S.C. § 1395(b), because the Defendant Property was found within this judicial district.

## BASIS FOR FORFEITURE

5. The Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance; and/or (2) proceeds traceable to such an exchange, in violation of the Controlled Substances Act, 21 U.S.C. §§ 841, 846.

## FACTS SUPPORTING FORFEITURE

*Richard Dwayne Perry's Prior Federal Drug Trafficking Conviction in this District*

6. On or about January 23, 2012, in the United States District Court for the Western District of Michigan, pursuant to a written plea agreement, Richard Dwayne Perry pleaded guilty to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii). (Case No. 1:11-cr-00187-PLM.) Perry agreed to the following factual basis for his guilty plea:

a. On or about Friday April 1, 2011, Darrell Stanfield, Corey Goss, and Richard Perry left Lansing, Michigan, and traveled to the area of Houston, Texas, for the express purpose of securing ten (10) kilograms of cocaine that the trio, by mutual agreement, intended to distribute in the Lansing area. They left in a 2002 Chevrolet conversion van bearing Michigan registration plates that was registered in the name of Andrew Davis, but was actually purchased by Richard Perry. In preparation for the trip, Richard Perry paid to have a hidden "safe" installed in the van that was intended to store the cocaine. The "safe" was installed during February of 2011.

b. On Wednesday April 6, 2011, Texas Trooper Kevin James stopped the 2002 Chevrolet conversion van in Chambers County, Texas. Darrell Stanfield was driving the vehicle, Corey Goss was in the front passenger seat, and Richard Perry was in the passenger compartment.

The three persons in the vehicle were in the process of returning to Michigan from Texas. A subsequent search of the vehicle resulted in Trooper James discovering ten (10) kilograms of cocaine in the hidden "safe." Richard Perry admits that he, Darrell Stanfield, and Corey Goss knowingly traveled from Michigan to Texas for the purpose of securing cocaine for distribution.

7. On or about May 21, 2012, then-Chief United States District Judge Paul L. Maloney sentenced Richard Perry to 60 months in the Bureau of Prisons, followed by five years of supervised release.

8. On or about November 6, 2015, Richard Perry was released from the Bureau of Prisons and commenced his five-year period of supervised release.

9. On or about December 6, 2019, the Court discharged Richard Perry from supervised release.

*Richard Perry's Drug Trafficking Organization in Lansing*

10. Beginning in approximately 2017 and continuing through the execution of multiple premises search warrants on or about June 4, 2026, the Lansing Police Department (LPD), Special Operations Section (SOS), and the Drug Enforcement Administration (DEA), received credible information from multiple sources Richard Dwayne Perry, also known as "Rich P," was trafficking large quantities of cocaine in the Lansing, Michigan area. Multiple sources reported that Perry serves as a principal source of cocaine supply and utilizes other individuals to distribute cocaine on his behalf.

11. During the investigation, investigators obtained telephone toll records for a cell phone used by Richard Perry. Analysis of those records showed communications between Perry and others involved in, or suspected to be involved in, drug trafficking, including Darryl Stanfield and Corey Goss, both of whom had previously conspired with Perry to distribute and possess with

intent to distribute cocaine.

12. In February 2023, investigators interviewed an individual arrested for drug and firearm offenses. The arrestee stated that Richard Dewayne Perry, also known as "Rich P," did not physically handle the drugs himself, but instead directed others to distribute the drugs on his behalf, including his brother, Ervin Lajuan Burtley, also known as "Gotti."

13. On April 27, 2024, investigators observed Richard Perry meeting with Brandon Washington, another suspected drug trafficker, in a parking lot in Lansing, Michigan. Following the meeting, Michigan State Police conducted a traffic stop of a vehicle occupied by Perry and Washington. A drug-detecting canine positively alerted on the vehicle. During a subsequent search, troopers recovered approximately $8,000 in United States currency from Richard Perry's black fanny pack, and approximately $2,000 in United States currency from Washington. Perry and Washington both declined an interview. Based on the training and experience of investigators, this encounter was consistent with the distribution and movement of drug proceeds.

14. In March 2025, investigators interviewed another individual arrested for drug and firearm offenses. The individual reported purchasing one-half kilogram quantities of cocaine from Ervin Burtley, also known as "Gotti," for approximately $9,000, and advised that Burtley's source of supply was his older brother, Richard Perry, also known as "Rich P." The individual further reported that Perry employed runners to transport drugs for him.

15. On November 12, 2025, a source of information told investigators that Ervin Burtley was distributing multiple kilograms of cocaine and obtaining that cocaine from his brother, Richard Perry. The source identified Perry from a photograph and stated that Perry trafficked large quantities of cocaine while utilizing other individuals to distribute drugs for him.

16. In September and October 2025, during surveillance, investigators observed multiple meetings between Richard Perry and Ervin Burtley at 1002 Attwood Drive, Lansing, Michigan. Investigators believed that Burtley was trafficking cocaine from the Attwood Drive residence.

17. On October 17, 2025, investigators observed Richard Perry and Ervin Burtley walking away from the driveway of 1002 Attwood Drive, Lansing, Michigan toward a black Chevrolet pickup truck. Perry was walking in front, and Burtley was walking behind him, carrying a large duffle bag. Investigators last saw Perry and Burtley at the doors of the pickup truck before it reversed from the driveway and left the area. Several hours later, investigators observed Burtley return, and walk up the driveway of 1002 Attwood Drive, Lansing, Michigan with the same duffle bag slung across his left shoulder. The bag appeared to be full. Burtley then entered the Attwood Drive residence with the duffle bag.

18. On October 21, 2025, investigators executed a search warrant at 1002 Attwood Drive, Lansing, Michigan, the residence from which investigators believed Ervin Burtley was trafficking cocaine. During the search, Burtley was present at the residence. Investigators seized approximately 51 grams of cocaine, 7.5 grams of cocaine base, or “crack cocaine,” digital scales containing cocaine residue, drug packaging materials, a money counter, five cell phones, and approximately $124,000 in United States currency in a heat-sealed bag, a method investigators recognized as consistent with the transportation and concealment of drug proceeds.

19. During the investigation, including as recently as December 2025, investigators conducted surveillance on the movements of a silver Ford F-150 pickup truck registered to Richard Perry, which often traveled to locations across Lansing associated with drug trafficking.

20. For example, in December 2025, the silver Ford F-150 pickup truck stopped at 1536 Ballard Street, Lansing, Michigan. On February 13, 2026, investigators executed a search warrant at 1536 Ballard Street and found a firearm, ammunition, drug packaging materials, two digital scales that tested positive for the presence of cocaine, six cell phones, and United States currency.

21. Also in December 2025 and again in February 2026, Perry's silver Ford F-150 stopped at 726 Gier Street, Lansing, Michigan, a residence associated with Demarius Hoyle. These stops often occurred in conjunction with stops at 1536 Ballard Street, other locations associated with drug trafficking, and Perry's known residence at 1824 Kingswood Drive, Lansing, Michigan. On February 13, 2026, investigators executed a search warrant at 726 Gier Street, Lansing, Michigan. Demarius Hoyle was the sole occupant of the residence during the search. Investigators found approximately 2.7 pounds of cocaine, approximately 2.2 pounds of methamphetamine, approximately 243 grams of heroin, one firearm, ammunition, digital scales with cocaine residue, drug packaging materials, a pill press, three cell phones, and $4,623 in United States currency.

22. Since at least 2020, multiple independent sources reported to law enforcement that Richard Perry regularly possessed and gambled extraordinarily large amounts of currency, including tens of thousands of dollars at a time and upwards of $50,000 to $100,000, at illegal gambling establishments in Lansing.

23. Specifically, on January 15, 2026, investigators observed Perry's silver F-150 pickup truck travel from the area of his known residence at 1824 Kingswood Drive, Lansing, Michigan, and make stops at the Event Spot Poker Room on W. Saginaw Highway, Lansing, Michigan, and Shiny Nails salon, also on W. Saginaw Highway, and then traveling to a nearby bank, where surveillance footage showed Perry depositing a significant amount of United States currency into an automated teller machine. Based on the training and experience of investigators

involved in the investigation, they believe Perry uses gambling establishments, like the Event Spot Poker Room, and other small businesses, like Shiny Nails, to "clean" or launder his drug proceeds before depositing it into a financial institution, making it appear that the funds were derived from legitimate sources rather than drug trafficking.

24. During the investigation, at no time during physical or electronic surveillance did investigators observe Richard Perry at a location for a reasonable amount of time that would be consistent with or indicative of legitimate employment.

25. On June 1, 2026, Richard Perry traveled by commercial aircraft from Atlanta, Georgia to Lansing, Michigan. Upon arrival in Lansing, a drug-detecting canine positively alerted on Richard Perry's checked luggage. Investigators observed Perry retrieve the luggage and travel directly to his residence at 1824 Kingswood Drive, Lansing, Michigan.

26. On June 2, 2026, investigators executed a search warrant at Perry's residence, 1824 Kingswood Drive, Lansing, Michigan. Richard Perry was present at the residence. During the search, investigators seized the Defendant Property, specifically: $32,000 in United States currency (26-DEA-001860), which was bundled into $2,000 increments, an additional $1,321 in United States currency (26-DEA-001862), documents in Richard Perry's name, and a firearm and ammunition. Investigators located the currency in a bedroom containing Richard Perry's Michigan driver's license, bank cards, personal documents, betting slips, vehicle title, and men's clothing.

27. During the search of 1824 Kingswood Drive, investigators also located the nine pieces of assorted jewelry (26-DEA-002090, Items 1-9), concealed within a hidden compartment in the stairwell leading to the basement. Based on their training and experience, investigators recognized the concealment of the jewelry as a common method employed by drug traffickers to

store proceeds and assets purchased with drug proceeds, to protect against seizure by law enforcement and theft by other individuals.

28. During the search of 1824 Kingswood Drive, investigators also seized Richard Perry's cell phone. During a search of that phone, investigators recovered a deleted video depicting multiple brick-shaped packages wrapped in plastic and tape. Based on training and experience, investigators recognized the packaging as consistent with kilogram quantities of drugs. Investigators also recovered messages discussing the movement of money, including one message that stated, "I got bread for (1) I'm sending him with," which investigators recognized as coded language referring to currency and likely proceeds related to drug trafficking.

29. During the investigation, investigators did not identify any legitimate source of employment for Richard Perry that would explain Perry's possession of large sums of currency, luxury jewelry, extensive gambling activity, and other assets.

**CLAIM I**

30. Plaintiff hereby re-alleges paragraphs 1-29 as referenced above.

31. The Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money, negotiable instruments, securities, and other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I.

**CLAIM II**

32. Plaintiff hereby re-alleges paragraphs 1-29, as referenced above.

33. The Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

**REQUESTED RELIEF**

Wherefore, the United States requests that the Court issue a warrant for the arrest of the Defendant Property; that due notice be given to all interested parties to appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Property be condemned and forfeited to the United States of America and be delivered into the custody of the United States Marshals Service for disposition according to law; and for such other relief as this Court may deem just and proper.

TIMOTHY VERHEY
United States Attorney

Dated: November 24, 2026

DANIEL T. McGRAW
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## VERIFICATION

I am a Special Agent of the Drug Enforcement Administration with personal involvement in this investigation.

I have read the contents of the foregoing Verified Complaint for Forfeiture In Rem, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 24, 2026

ERIC FALLETICH
Special Agent
Drug Enforcement Administration